Good morning and may it please the court. My name is Michael Stanton and I represent the appellant Philip Potter. In June 2014, the respondent village issued a pre-deprivation due process notice to the appellant. Relating to the proposed revocation of Mr. Potter's certificate of occupancy, it then convened a pre-deprivation due process hearing, after which the village attorney issued a report and recommendation. The report and recommendation made findings of fact, none of which stated that the village had actually revoked the CFO. The report and recommendation was just that, a recommendation for the municipality to take final action at some time in the future. The board then took up the proposed resolution to revoke Mr. Potter's certificate of occupancy and it declined to do so. Yet according to the village, all of that was window dressing. The village now claims that it actually revoked Mr. Potter's certificate of occupancy in 2011. Your client brought an article 78 proceeding since filing this federal suit, am I right? That's correct, your honor. And in that proceeding, a New York court has determined in April of last year that a final determination on the revocation has not yet been made. Exactly right, your honor. And that's in part because your client hasn't afforded access to the premises? Is that what the court said? That was what the court said in 2024, that's correct. And a little bit of background on that, your honor. And that, just to make sure I'm just understanding that in that decision, you've appealed that decision and it's pending before an appellate court. Correct, we appealed that decision to the second department. The second department issued a stay of enforcement of the inspection that was directed by Supreme Court as a result of that article 78 proceeding. Our position is that there is no provision... I'm sorry, go ahead. I'm sorry to interrupt. Finish your answer. Sure. There is no provision of the village code that allows for an inspection after a certificate of occupancy has been issued. Our position to the second department and our position here is that a post-issuance inspection of the premises for the very purpose of determining whether grounds exist to revoke the C of O is unconstitutional and improper. But your honors, regardless... Okay, before you get to the regardless, you also had a lawsuit against the village that terminated in 2021, where the court held that you were entitled to a hearing with respect to whether or not to revoke the C.O. And that basically adopted what you just said a few minutes ago about the prior hearing and the report and recommendation. And the court finished with, the court finds that the administrative remedies have not been exhausted and the statute of limitations for the alleged revocation of the C.O. has not expired. You didn't mention that in your opening and I was wondering, are you contending that collateral estoppel from this decision prevents the village from making the argument that it did in the district court here? My position is that that is not a final determination and therefore collateral estoppel would not apply. Okay, so it doesn't help you as much as I might have thought it did. Your honor, I think it does partially help, but what I think helps more... I mean, why isn't it a final determination? It's the end of the case. Ordered that the proceeding be dismissed is the last line of that order. Completely understood, your honor. And I think there, I hate to argue against my own interests here, but for the purpose of intellectual honesty, I think that a determination on the one hand that the application was premature, precludes a finding, and again, I acknowledge I'm arguing against my own interests, but I think that that determination is important because it's just yet another in a strange situation though, isn't it? Because the, although you might say, well, this is a sort of dismissal without prejudice, right? And there's a certain sense in which that's not final. On the other hand, essential to that determination was the finding that the CO had not been revoked. Correct, your honor. And what I do think has collateral estoppel and res judicata effect, and what I will note was not contested on appeal, was the village justice court disposition of criminal proceedings in 2014. And as a result of those proceedings, village justice court dismissed all the criminal violations that were issued against my client, and it held that as of 2012, when the criminal summonses were issued, Mr. Potter had a valid CFO. Okay. I mean, you know, this is probably a less friendly question because this is a very complicated history with all kinds of contradictory rulings flying around, but are you, as we stand here today, in this litigation before us, claiming damages from the criminal prosecution and the rental denials? We're not claiming damages at this time relating to the prosecutions. Those we dismissed on consent. But with respect to the rental denials, that partially hinges on the determination of this court as to whether equitable tolling or the continuing violation doctrine apply. Yeah, it's a funny sort of thing, though, because in those, I mean, I'm very sympathetic to your argument that your ability to contest the alleged revocation or maybe is at least alive, but with respect to those rentals, you were told you can't do something. You were directly harmed by that. You have a legal theory as to why that was wrong. That all happened, the last one was in 2019. Correct. So why isn't all of that time hard? I mean, you could easily have brought that lawsuit. Those are discrete acts in each year. They may stem from something that's deeper and may peculiarly still be alive about things that happened in 2010 and 2011. But why wasn't it necessary for you to bring a lawsuit within the statute of limitations period in order to obtain relief from those particular orders? Thank you, Your Honor. That is a thorny question, but I think it's decided in the appellant's favor. He did. He brought state court declaratory judgment action at that time. And the result of that action was a determination that the village had not yet revoked the CFO. Your Honor, that should have been the end of the story. The village at that point, upon a Supreme Court determination that a revocation had not yet occurred, the village at that point was required to reinstate Mr. Potter's CFO. This was the second judicial determination that the CFO had not yet been revoked. And what the village has done instead is it has refused to reinstate the CFO. It has refused to allow the petitioner or the appellant quiet enjoyment of his premises. And he remains in jeopardy as a result of the village's, I would say, arbitrary and irrational actions and its targeting of him. Can you help me understand? I was trying to figure out sort of how this is happening. And I wondered whether the administrator who is essentially saying, no, you don't have a certificate of occupancy, operates independently from the village board, which is the body to which these corridors were sort of more explicitly directed, or whether the administrator answers to the village board. And I realize that's sort of a little bit ancillary to the central issue here, but I'm just curious if you could help me understand how that happens. Your Honor, I think the short answer is that we're interested in knowing that too. We think that that's a proper... Well, as a matter of statutory structure, I guess, is the administrator a separate, at the state level, we'd call a separate constitutional, independent constitutional officer, or does the administrator answer to the board? Do we know the answer to that? We do not. And so we have a building inspector on one hand, who, according to the village, is allowed to revoke certificates of occupancy that have been issued and can do so at will. Now, we also have a board of trustees and a mayor on the other hand. Now, the mayor and the board of trustees, we would say, are the final determining body in terms of whether or not those types of actions are proper. None of that has occurred in this case. There has been no final determination by any body or officer with authority to revoke the CFO in the first place. And the trustees essentially tabled the request to terminate this. So as far as they're concerned, you still have a certificate of occupancy subject to potential revocation that hasn't been fully adjudicated, but their administrator continues to act as though there isn't one? Is that the state thing? It is not just the administrator at this point, Your Honor. It is the village itself. The village has taken the position, as articulated by my adversaries' papers and in my conversations with the village attorneys, that the CFO has been revoked. Whether the revocation was lawful or not, isn't there a question of fact, at least, as to whether somebody purported to revoke it back in 2011? Do you contest that? Do you say, this is forgeries and after-the-fact stuff? Or do you acknowledge that that happened, that somebody in 2011 or 2012 drew an X through the certificate of occupancy and wrote revoked on it? Your Honor, I understand that someone must have done that within the village. We obtained that information through a freedom of information request. That was not a position that was no body or officer that confirmed the revocation occurred? Well, help me with this. It has been stated, at least by your adversaries, that a letter was sent to you, your client, saying this at about the time that that happened. Your position is that was never received? Correct. Mr. Potter did not receive that letter. The communications that he received after that, the assurances he received after that, time and time again, informed him in 2014 and 2015 that those actions had not taken place. Right. But he did file the Freedom of Information Act request in 2012, and you're not disputing that he received the X, the document that has a handwritten X on it, void as of July 15, 2011? Correct. We're not disputing that he received that freedom of information. In 2012? I'm not positive whether it was 2012, your Honor, but it was within that relevant time frame of, you know, 2011 to 2014. I'd like to briefly touch on the issues of equitable tolling and the continuing violation. Very briefly. Very briefly. Your Honors, what has been made clear in this case is that the village has changed its opinion many times to the appellant's detriment. And although the continuing violation and equitable tolling doctrines are disfavored, as your Honors have noted, the facts of this case are tortured. The appellant was left to guess what the village had done and how it had interpreted its own actions. And as a result, in addition to the fact that we think it is clear that any accrual date would have been 2024 and not 2011, we also submit that equitable tolling and continuing violation apply to this case. If we agreed with you and vacated the district court's order, I'm sort of struggling to think about how it would be proper for the federal courts to then continue to forge ahead in the context of a parallel state action that hasn't yet run its course, that kind of trots the same ground. What's your position on that? Thank you, your Honor. So the state court action is a limited Article 78 proceeding, which only seeks the mandatory reinstatement of the certificate of occupancy. Isn't that one of the items of relief that you're seeking in the 1983 case, or am I... No, we're seeking monetary damages only in the 1983 case. We withdrew in the amended complaint the cause of action seeking the reinstatement of the CFO in federal court. So in order to adjudicate damages, the court has to make a determination about the merits, it seems to me, or am I misunderstanding? What's the act from which you seek damages? The village's revocation of the CFO. Okay, but we don't even know yet whether or not the village will be able to effectively revoke the certificate of occupancy. And as of now, the status quo is that it's acting like it's not there, but all the courts in New York are saying it is. I think that the village's position is the one that we must accept at this time. And the village has made, if not a final, then a de facto final determination that it is communicated to the appellant through the context of these proceedings. I would have thought that your damages stem from concrete actions that were taken by the village. Those actions may have been premised on the idea that you lacked a certificate of occupancy, but there are specific things that they did. Most prominently in immediate financial terms, it may not be the most important, is the denial of the rental permits. I take it you're also asking damages for the monetary value of the quiet enjoyment of your property. That's correct, Your Honor. Yeah. And that stems from their insistence that you don't have a certificate of occupancy, which may be a different thing than the legal question of whether the certificate of occupancy was actually revoked as a matter of fact at any point, is one question. Whether that revocation was unconstitutional or not is another thing. But it's at least somewhat distinct from the question. I think part of the problem is it may seem like you're doing two separate things at once, that you're claiming that they've never revoked the certificate of occupancy, and then you're suing them for revoking the certificate of occupancy. But I'd suggest that maybe the latter part is more like it would be kind of the same thing if no one ever had drawn that X, and they were just acting like, sorry, you don't have a certificate of occupancy, and you were waiving a certificate of occupancy, and no one had one with an X to counter it with. There would still be at least an argument that that's an unconstitutional, arbitrary deprivation of your use of your property if they don't really have a basis for that. Your Honor, I completely agree. And one of the things we noted in our brief was that this is not a typical deprivation case. This is not an unlawful detainment or an unlawful- There's nothing typical about this. Thank God there's nothing typical about the way that the college has acted, and I'll be very interested to hear what they have to say for themselves about that. Can I just ask, just again, returning to the precise status of the litigation that's ongoing now in state court. So the lower court, it's on appeal now, but the lower court ordered your client to provide access to the building within, I mean to the premises within a specified period of time, and upon being afforded that access, am I right in recalling that what the state court ordered was that the village was then to make a determination as to whether a certificate of occupancy should be revoked, or was it whether it had been revoked? It was whether it should be revoked. Right, that's what I thought. Okay. And one last, sorry about this, to keep you up here with more and more factual questions. All of that stuff that's happening, happened in 2024 in the state courts, is something of which I suppose we can take judicial notice because these are public documents of what the court has done, but all of that transpired after the district court acted in this case, right, and after the notice of appeal was filed. Correct, your honor. We filed the article 78 proceeding when district court initially dismissed primarily on ripeness grounds, saying that we were required to compel the village to bring a hearing on notice. Right, so that lawsuit, that lawsuit, the current lawsuit in state court, was undertaken in reaction to the order that is on appeal now, and all of the developments that happened since in that case postdated the district court's action. One brief nuance, your honor, the article 78 proceeding was commenced in relation to the initial dismissal without prejudice of the complaint. We then filed, we then commissioned a certificate of occupancy search simultaneous with the commencement of the article 78 proceeding. Right, that's right, and that's right, and so that state case was filed while the district court proceeding was ongoing. Correct. But was decided after the... Correct. The timeline is a little hard to keep track of, but I think I have it. Very good. I'm happy to answer any further questions the court may have. Thank you, your honors. May it please the court. I would like to address some of your questions about the timeline here, because the case does go back to 2009 when plaintiff purchased this property and then obtained a building permit to demolish the existing structure and build a new two-story house in 2011. At the conclusion of that, initially a temporary certificate of occupancy was issued. At some point that became, the temporary part of that was removed. Meaning a permanent certificate of occupancy? Yes, yes. Sorry, I don't mean to be obtuse about that. Thereafter, the plaintiff was notified by letters in 2011 and 2012 that there was a problem with the certificate of occupancy, that in fact there were violations that existed, and on that basis the certificate of occupancy is null and void under New York law. There's no question in my mind that by sometime in approximately 2012, the plaintiff was on notice that the village took the position that he did not have a certificate of occupancy. However, he found that out by freedom information request or whether you mailed him a letter or whatever, he knew that. Indeed, in 2012 the village attempted to prosecute him for occupying his premises without a certificate of occupancy. I don't know anything that seems a clearer indication that the village takes the position that he doesn't have a certificate of occupancy, and if we stopped the clock there and nothing else had happened, and in whatever it was, 2020, two, three, whatever, he files a federal court action, you win on statute of limitations ground. Hand down, game over. However, for a period from 2012 through right up to the present day, courts, several courts, the criminal court in in the village, Suffolk Supreme, have said he still has a certificate of occupancy. In the current litigation, whether he's losing or winning or whatever the heck is happening there at the on the premise that he has a certificate of occupancy, the village undertook formal proceedings to revoke what you now say is a non-existent certificate of occupancy, right? Yes. To revoke it, there was a recommendation to the board that they do revoke it, and they voted no. Now, if I may, your honor, they didn't vote no, they tabled. I have not gotten to a question yet. Oh, they tabled it indefinitely and they have never adopted that report and recommendation, right? That is correct. That is correct. So, you know, it's a little unusual to say that something that might have, a claim that might have been barred by the statute of limitations at one time sort of stops being barred, but I'm having a hard time understanding how we can just go back to 2012 and say, oh, that's when he should have started taking actions when he did take actions all over the place. He's fighting you in the criminal court. He's filing a case in suffix supreme. Everybody's telling him he has a C of O. Meanwhile, the village continues to act as if he doesn't, but has declined a recommendation formally made to it in proceedings that the village initiated to revoke the certificate of occupancy. It has declined to act on that recommendation, and it didn't like issue a judgment of sorts, announced that we've decided we don't have to deal with this because he doesn't have a certificate of occupancy, so we're dismissing the revocation proceeding. It just sits there tabled, which puts the plaintiff in a position where when he goes to the state courts, they're constantly telling him, hey, you know, nothing's happening over there, and he's saying that nothing's happened over there. That's why I'm processing rights are being denied. So what the heck is going on? How can you stand there and tell us that this case is time barred by stuff that happened in 2012 when all this other water has flowed over the bridge and under the dam since then? Well, because the causes of action that are claimed here are based on the knowledge that he had that the village position was that there was no certificate of occupancy in 2011, 2012, and when he was informed that the rental was 2020, there was one action in 2019 that was dismissed because they needed to file a notice of claim. They did that and brought the new action in 2020, resulting in the 2021 order that directed a hearing. That's the one that said there isn't a final determination, there's a hearing. The plaintiff was advised at that time, we'd like to schedule a hearing, we need to inspect the home because at this point, the last time the home was inspected was in 2011. Can I ask a question about that? Because I thought that the problem that caused the revocation of the certificate of occupancy in the first instance was that a closer look at the survey on which it was based suggested that it wasn't compliant. Correct. So it strikes me that if that's the basis, why do you need an inspection to decide whether the survey that was the basis for the certificate of occupancy was in fact compliant? Or is there a different question now that time has passed that would inform the revocation decision? Well, the specific violations involve side yard and rear yard setbacks, a deck going too far. There was also a problem with some of the pool heating system that wasn't in compliance with state codes. The question that I'm asking is whether the basis for the revocation is that what actually ended up being built on the ground doesn't conform to the survey. Correct. It does conform to the survey, but somebody blew it. Somebody missed the fact that the survey documented things that were violative of the code. No, the as-built did not conform with the survey. So how could they have sought to revoke it in 2011 without conducting a site visit then? Because that was based on the site visits that had been performed in 2011. So why would you, so if you're seeking a new, is your position right now, when I say you, I mean your client's position. Yes, absolutely. That there is in fact a certificate of occupancy and the village is seeking to revoke it and wants to be able to enter his property to do an inspection so that it can conduct the proceedings to revoke it. The position is that the plaintiff was informed in 2011 and 12 that it was revoked, that thereafter the village attempted to, on a couple of occasions, come into compliance with the due process on that. So let me understand what you've just said. It was revoked in 2012, but the village recognized that that was done without due process and so it was in the process of attempting to provide a due process mechanism, which it never actually completed. And so therefore, even though the village recognized that it hadn't yet provided due process, you consider the act that was purportedly taken to have been a final act, even though you then had a hearing? Right, because from 2014 to 2020, the passage of the six years, at that point there had been several changes in building inspectors. So in order to conduct a hearing, the village needed somebody who would be able to justify as to the condition of the property. And I want to step back. They didn't have any of that because of the passage of time. Because I thought Judge Robinson was asking you, is it your position that even though you acknowledge that the revocation that took place in 2011 or 12 was without due process and therefore, I assume, void, that nevertheless, you have been justified ever since in keeping him out of his property and denying him his right to rent it on the basis of a denial of a revoked certificate that his certificate of occupancy had been revoked? Excuse me, Your Honor. He hasn't been prevented from entering his property. He's been using the property for these 16 years. Even though you tried to criminally prosecute him the first time he tried to move in. That wasn't the first time that he moved in. But yes, there was a criminal prosecution that was dismissed. The village prosecutor consented to that dismissal. Yes. So after that, he has been able to use the property anyway. He has, yes. But he was not, but you He was not permitted to rent the property. What you're saying is he's not permitted to rent the because he doesn't have a certificate of occupancy. Correct. Because the certificate of occupancy that he had was unconstitutionally revoked. No. Because the certificate of occupancy that had been issued is void because it was illegally issued because there are existing violations. Both village and state code violations. How is that different? But I thought you just acknowledged that that action was taken in violation of his procedural due process rights. You don't, you didn't concede that? No, I didn't concede that. Isn't that what, but that's what the state court said? Or no, it didn't really say that. No, it didn't say that. That it's never been revoked. Right. So for terms of the Article 78 proceeding, the state court wanted a final determination from the, from the board. It directed that the board attempted to comply by asking for an inspection, which was never done. And instead, two years later, started another Article 78. How do we square this? I'm just trying, I'm looking back at the 2014 municipal court decision where it said the village of Ocean Beach did issue a certificate of occupancy for the resident. The village could bring a proceeding and grant a hearing as to whether or not it was wrongfully issued. That's a whole separate issue. Nothing to do with us. Isn't that court saying as of now? Okay, so you're referring to 2014? November 2014 municipal court judgment. The criminal, that's the criminal. Oh, the criminal court. I believe that was, sorry, I thought that was 2012 that the. I have November 2014. Okay. 2012 was when that action was initiated by the village. 2014 is when after two years of what were evidently to the judge very frustrating, the umpteen, he keeps calling it times that he had to conference the case. I apologize. And because the timeline, I know that then there was a hearing by the village attorney with recommendations in 2014 also. So that actually preceded the dismissal. So the dismissal of the criminal court proceeding is essentially an evidentiary problem that the village court had in terms of not being able to pass on those violations in light of the question of a certificate of occupancy. That there was a certificate of occupancy issued and therefore the court wasn't willing to pass on the violations. And is it your position that you don't need to hold a due process hearing before revoking that certificate of occupancy because it was void from the outset? Yes. Okay. So your position is basically that the New York court twice hasn't been wrong as to the status of things. Well, no, because the New York state court was seeking a determination that it could rule on in the article 78. Right. And that the actions that had been taken were not administratively finalized. Right. So the court has said you haven't actually revoked the certificate of occupancy. We will hear this case once the village has taken the steps to do so. So the revocation by the building inspector is valid. It needs to be passed on by the village board before the state court can rule on what the village board does, but not necessarily the inspector. Why would that be? This I think goes back to a question that Judge Robinson asked Mr. Stanton. Does the village, does the inspector act independently of other village authorities? Does he have a right to take all kinds of actions that are not subject to supervision by anybody? No. He can issue the building permits and certificates of occupancy without obtaining the approval of the board. But then that's subject to challenge or appeal up to the board. Yes. So his action is not final until the board takes it. Correct. And that's what the Supreme Court in Suffolk has asked. What is the legal effect with respect to the person who is, has the permit that the building inspector has purported to overturn? Does he have, the building inspector's action is final until and unless the board of trustees overturns it? The ruling by the building inspector is reviewable by the board. Yeah, but it is effective until such time as board action is taken. So if the village, if the building inspector does something and the village, there's an appeal to the village board and the village board says, well that's nice, let's table this for 10 years. Then the action is effective, remains effective as to the property owner. And you're telling me that if that is the state of things under New York law, there's not an article 78 proceeding that can be brought? Well there is and in fact the plaintiff took that. Yes, to article 78 proceeding. Right. And is it your contention, I'm just trying to understand your argument, it's your contention that the problem is that the homeowner has not made his premise, has to make his premises available for inspection before the town, before the board can act? Yes, and Judge Santorelli's second order directs that. Both article 78 proceedings, the upshot was make your premises available, there'll be an inspection and then the town board should issue a final decision? Well to be frank, in the first action, the first court order does not direct the inspection. The village board asked for the inspection to be done prior to the hearing, there was no response from the plaintiff to that. It wasn't a no, it wasn't a yes, there was no response to that. And when you're saying before the, again the timeline is very complicated, before the hearing at which the board voted three to two to table the resolution? No, this is well after that. See again, this is what makes things so complicated, isn't it? Because what I was just describing as a hypothetical, the building inspector takes an action and then the property owner appeals it to the board, is not in fact what happened here. What happened here was that a court directed the village to undertake proceedings to revoke a certificate of occupancy. They took that on their initiative in response to the court's order. Of course, ultimately it was the plaintiff who stimulated all of that. If I may, the first state court order didn't come until 2021. Right. So the hearing at which the matter was tabled was back in 2014. And what provoked that to happen? I would say that was the criminal proceeding. Okay, so in response to a court refusing to take the action that would have been entirely appropriate if the certificate of occupancy had been revoked, the board then initiates, or somebody at the village initiates a proceeding, directs a hearing to take place. So this is not an appeal by, this is you guys saying in response to the court, the court's position that I don't see any revocation of the certificate of occupancy, you then undertake. Now at that time, before that hearing, was there a request to the plaintiff to have the property inspected? At that time, no, because the parties that were able to testify at the hearing were available. So there was a building inspector and the actual builder testified at that hearing. Okay, so we have a perfectly sound hearing taking place, I suppose. A hearing that a court has blessed, it takes place, there's a determination made by the lower level officer in the form of a report and recommendation, and the board refuses to act on that recommendation. It tables it. Yes. Indefinitely, and it's never been returned to in a decade. Which is why there's a statute of limitations problem here. Which is why, I mean, what is it that, you know, he's taking judicial actions during that period. Doesn't that at least toll the periods when the lawsuits are going on? Well, no, the next judicial action isn't until 2019. Right, and by then it's all over. Yes. Because he should have sued in response to the non-action of the trustees. Well, in terms of the causes of action that are pled here, he had knowledge of that going back to... Well, he had knowledge of the criminal case to the extent he's seeking anything out of that. He has knowledge that he was denied rental use of his property. Right. He doesn't have knowledge that is, you know, is there a ripeness issue here? I mean, what he has knowledge of is that the village has tabled the decision on his certificate. Right, and in 2019 he brought a state court action. Conceivably, he could have brought this action then. But, you know, it's interesting when my colleague said something about the village declining to revoke. You were very quick to properly correct and say, no, no, it was just tabled. Well, that cuts both ways, right? If it's just tabled, that means it's still there. There's still a pending indefinitely action unless and until they actually take action on it. So why doesn't that essentially, whether you call it equitable estoppel or the act still hasn't happened yet, why doesn't that keep things running until the court acts? Well, the procedure of tabling it entails the problem of now when we received the 2021 order from Judge Santorelli saying have a hearing that you've got new board members, new building inspectors. That's not, I mean, that's because your client made a decision to table. And the question is what's the legal significance of that tabling? And it seems like for some purposes you want that to have been tantamount to a decision to revoke the certificate of occupancy. And other purposes it seems like you're saying, no, no, it was no action at all. And if it's no action at all, I think you've got a problem. So the action of the village in revoking the certificate of occupancy goes back to the 2011-2012 letters. And the action of the village board, which the state court has directed to be completed, and the village has attempted to comply with that. So Mr. Stanton's client is in the position that the statute of limitations has already run on his claims. And it's also not ripe yet, because there hasn't actually been any action that he could sue about, at least with respect to declaratory and injunctive relief as to the effectiveness of the certificate of occupancy. I have a separate question that I asked him before, and I think you've got a more solid basis there for saying he can't get damages for things that were done to him in 2019, because those are independent acts which may have been premised on some kind of theory about the certificate of occupancy. But the acts happened. There's no question they happened. He knew they were costing him money. That triggers a cause of action. That seems to me to be a very coherent argument. But if what he's doing in this federal action, and part of what he's trying to do, is to get some final adjudication that the revocation was a violation of due process, or else that the village has been arbitrarily and capriciously acting as if there was a revocation when there was no valid revocation, I'm having a hard time understanding why all of these intervening events don't just set that up. Well, to that extent, one of the problems for this court is that the plaintiff has not exhausted his post-deprivation remedies. That's ongoing. Is the hearing a post-deprivation remedy, or has the court been very clear that it's a pre-deprivation remedy, the hearing, the board hearing? The court's decision to not grant his petition for declaratory judgment as to the efficacy of the certificate of occupancy shows that it's still the action that is currently pending in the appellate division was not a final determination in that action. Judge Santorelli, in that action, remanded it for a hearing. Plaintiff obtained a stay of that directive, and is appealing the remainder of that decision. So in terms of the post-deprivation, if the argument is that he's entitled to the certificate of occupancy, that's still pending in the state court. That hasn't been determined yet. So if there are any other questions, I'd be happy to answer them. But I thank you for your time and for your extra time. We'll hear about it. Your honors, I'd like to touch briefly on the concept of the building inspector's authority. The inspector's authority is enumerated in the village code. The building inspector is allowed to issue building permits. The building inspector is allowed to issue certificates of occupancy without board approval. The building inspector is not allowed and has no authority to revoke a certificate of occupancy once it's been issued. In order for there to have been a final determination, the board of trustees had to bless the revocation. There had to have been a final determination at some point. The village has impossibly taken the position that the initial was effective, and yet now the plaintiff has no remedies. That is an inherently inconsistent position. It is arbitrary. Just on the village, the building inspector's authority, 64-4, the building inspector has the power to, quote, administer and enforce all provisions applicable to the construction of buildings and structures. So you say that gives him the to issue but not revoke? Correct, your honor. Is there any other provision that I should be looking at other than that one with regard to his authority? Yes, your honor. 64-13 and 64-14. Those are the provisions that relate specifically to occupancy of structures and issuing certificates of occupancy. There's a specific code that allows for issuance, no corresponding code that allows for revocation. I'd also like to touch briefly on the issue of the violations at the property. The violations Mr. Potter was cited for are all the structures that are listed on the face of the certificate of occupancy itself. Also under the village code, once listed on a certificate of occupancy, those structures are permitted. I'm happy to answer any other questions. Thank you, your honor. We will take the matter under advisement.